UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSE DANIEL CASTILLO-ANTONIO, <br> Plaintiff, <br> v. <br> GUADALUPE ANTONIO BUENO, <br> Defendant. | Case No. 18-cv-04589-JSC <br><br> **ORDER RE: PLAINTIFF'S MOTION FOR ATTORNEY'S FEES** <br> Re: Dkt. No. 46 |

Plaintiff Jose Daniel Castillo-Antonio ("Plaintiff"), a physically disabled person, and Defendant Guadalupe Antonio Bueno ("Defendant Bueno"), the owner and operator of Tacos Sinaloa, reached a settlement agreement after Plaintiff sued Defendant for multiple Americans with Disabilities Act violations, claiming that Bueno's business was inaccessible to Plaintiff and others. (Dkt. No. 43.)[1,2] Now before the Court is Plaintiff's Motion for Attorney's Fees. (Dkt. No. 46). After careful consideration of the parties' briefing, and having had the benefit of oral argument on August 29, 2019, the Court GRANTS in part Plaintiff's motion for attorney's fees because the total hours sought are not reasonable.

## BACKGROUND

### I.  Complaint Allegations & Procedural History

On July 30, 2018, Plaintiff filed a complaint against Guadalupe Antonio Bueno, Anh Chan, Don Chan, Judy Chan, Richard Chan, and Golden Valley & Associates, Inc. (Dkt. No. 1.) The complaint alleged that Tacos Sinaloa, a taco truck in Oakland, California, was subject to the "'readily achievable' barrier removal requirements of Title III of the Americans with Disabilities

---

[1] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the documents.

[2] Plaintiff and Defendant Bueno have consented to the jurisdiction of a magistrate judge pursuant to 28 U.S.C. § 636(c). (Dkt. Nos. 3, 19.) The claims against the other defendants were severed into a separate case. (Dkt. No. 25.)

Act of 1990." (*Id.* at ¶ 1.) The complaint also alleged several other related state code violations, including violations of the California Civil Code and the California Health and Safety Code. Plaintiff, who requires use of a wheelchair, alleged barriers such as improper parking spaces, inaccessible routes from parking space to entry of the food service area, too high of a service counter, steep ramps, and too small of a bathroom. (*Id.* at ¶¶ 4–5.) These barriers interfered with Plaintiff's access to the facilities at Tacos Sinaloa, depriving him of full and equal enjoyment of the services, facilities and privileges, and causing him embarrassment and humiliation. (*Id.* at ¶ 5.) Defendants were parties that Plaintiff believed owned, operated, possessed, built, and kept Tacos Sinaloa. (*Id.* at ¶ 8.) Plaintiff sought injunctive relief, damages, and litigation expenses. (*Id.* at Prayer for Relief ¶¶ 1–8.)

The Clerk of Court entered default as to Golden Valley & Associates, Inc., Don Chan, Judy Chan, Richard Chan, and Anh Chan on September 18, 2018 for failing to appear after service. (Dkt. No. 12.) The entry of default as to Golden Valley & Associates, Inc. was subsequently vacated following the parties' stipulation, (*see* Dkt. No. 26), and the Court granted the parties' stipulated dismissal with prejudice as to Golden Valley & Associates, Inc. on July 29, 2019, (*see* Dkt. No. 49).

As relevant to the instant motion, on September 28, 2018, Plaintiff filed a motion to strike Bueno's answer and affirmative defenses. (*See* Dkt. No. 13.) The Court issued an Order addressing that motion on November 26, 2018, directing the parties to comply with General Order 56 and ordering Bueno to file an amended answer. (Dkt. No. 32.) Bueno did so on December 11, 2018. (Dkt. No. 35.) On June 4, 2019, the parties attended an ADR session where they partially settled the case and agreed that attorney's fees would be decided by a separate motion. (Dkt. No. 43.) Plaintiff filed the instant motion for attorney's fees on July 15, 2019. (Dkt. No. 46.) The motion is fully briefed, (Dkt. Nos. 50, 51, 54),[3] and the Court heard oral argument on August 29, 2019. (Dkt. No. 55.)

---

[3] On August 9, 2019, Defendant filed a sur-reply, (Dkt. No. 54), to address Plaintiff's allegations (*see* Docket No. 51 at ¶ 5) that Defendant had not removed two barriers named in a prior suit. According to Defendant, he was not aware of other barriers at the property as Defendant was not a party to the 2014 suit and Defendant completed all repairs requested by his landlord in 2016.

2

**DISCUSSION**

**I.      Attorney's Fees Under the ADA**

Plaintiff's claim arose under the Americans With Disabilities Act of 1990 ("ADA") and related state laws. The ADA permits the "prevailing party" to seek attorneys' fees and costs. 42 U.S.C. § 12205. A plaintiff "prevails" when he or she enters into a legally enforceable settlement agreement against the defendant. *Barrios v. Cal. Interscholastic Fed'n*, 277 F.3d 1128, 1134 (9th Cir. 2002).

To calculate an award of attorneys' fees, district courts apply "the lodestar method, multiplying the number of hours reasonably expended by a reasonable hourly rate." *Ryan v. Editions Ltd. W., Inc.*, 786 F.3d 754, 763 (9th Cir. 2015) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). "A reasonable hourly rate is ordinarily the prevailing market rate in the relevant community." *Kelly v. Wengler*, 822 F.3d 1085, 1099 (9th Cir. 2016) (internal quotation marks and citation omitted). "[T]he burden is on the fee applicant to produce satisfactory evidence—in addition to the attorneys' own affidavits—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Camancho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 980 (9th Cir. 2008) (internal quotation marks and citation omitted).

The party requesting fees also bears "the burden of submitting billing records to establish that the number of hours" requested are reasonable. *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1202 (9th Cir. 2013). The number of hours should not exceed the number of hours reasonably competent counsel would bill for similar services. *Hensley*, 461 U.S. at 434. Courts may reduce the hours expended "where documentation of the hours is inadequate; if the case was overstaffed and hours are duplicated; if the hours expended are deemed excessive or otherwise unnecessary." *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210 (9th Cir. 1986) (citing *Hensley*, 461 U.S. at 433-34).

---

(Dkt. No. 54 at ¶ 2.) Defendant's sur-reply also clarifies that Defendant had not been sued by Plaintiff at this location before, but rather at a different property in 2016. (*See id.* at ¶ 5.) The issue is irrelevant to the Court's determination of the instant motion.

1    The Ninth Circuit has identified several factors courts should consider in determining the reasonableness of the number of hours expended and the hourly rate charged, including: (1) the "experience, reputation, and ability of the attorney"; (2) "the outcome of the results of the proceedings"; (3) "the customary fees"; and (4) "the novelty or the difficulty of the question presented." *Id.* (citing *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975), *abrogated on other grounds by City of Burlington v. Dague*, 505 U.S. 557 (1992)).

**II.    Amount Requested**

Plaintiff requests $21,700.00 in attorney's fees. (Dkt. No. 46 at ¶ 1.) In support of the requested amount, Plaintiff's counsel, Mr. Mac Bride, submits a declaration with exhibits, including an itemized list of counsel's activities and the corresponding hours for his work in this case. (Dkt. No. 46-2, Ex. 1.) The total amount requested constitutes 62 hours at $350 per hour; that total includes the time spent on the instant motion. (*Id.* at 3.) Defendant opposes the amount requested and asks the Court to reduce the requested fees to a "reasonable, noninflated amount." (Dkt. No. 50 at 19). The parties do not dispute that Plaintiff is due a fee award. Accordingly, the Court addresses the reasonableness of the hours expended and the requested rate in turn, below, and concludes that a reduction in the hours expended is warranted.

**a.    Reasonableness of Hours Expended**

Defendant challenges the hours expended as "inflated" and/or unreasonable based on the time spent on the following tasks: (1) drafting the complaint; (2) litigating with dismissed defendant Golden Valley; (3) researching and drafting the September 2018 motion to strike affirmative defenses; (4) communicating with Plaintiff; (5) reviewing the site inspection reports; (6) reading emails; (7) reviewing Defendant's amended answer; and (8) drafting the instant motion. (*See* Dkt. No. 50 at 12-18.) The Court address each item in turn.

**1.    The Complaint**

Mr. Mac Bride asserts that he spent 4.7 hours drafting the complaint. (*See* Dkt. No. 46-2, Ex. 1 at 1.) Defendant argues that it could not have taken Plaintiff 4.7 hours to draft because it is "basically a simple 'cut and paste' document" similar to "the 200 complaints that Plaintiff has filed in this court." (*Id.* at 12.) Defendant includes as exhibits to its opposition the complaints in

4

four recent cases in this District involving Plaintiff and Plaintiff's counsel. (*See* Dkt. Nos. 50-1 – 50-4, Exs. 1-4.) Defendant also cites other district court cases in the Ninth Circuit where the court reduced the amount of time "frequent litigants" spent drafting "boilerplate complaint[s]" or "routine and duplicative work" and asks the Court to reduce the hours expended here, accordingly. (*Id.* at 12-13.)

A review of the complaint in this case in comparison to the those submitted by Defendant where Plaintiff was also a party and represented by Mr. Mac Bride shows that the complaints are similar and contain nearly-verbatim language in many respects, including in the discussion of barriers experienced at the subject properties. (*Compare* Dkt. No. 1 *with* Dkt. Nos. 50-1 – 50-4, Exs. 1-4.) Plaintiff's reply "concede[s]" that Mr. Mac Bride does not "draft each new complaint from scratch" because "to do so would be duplicative." (Dkt. No. 51 at ¶ 9.) Plaintiff asserts, however, that "counsel does dedicate significant time to investigating the barriers and to tailoring each complaint to those barriers." (*Id.*) Thus, Plaintiff argues that his "complaints are not just a mindless 'cut and paste' operation that merely changes the names." (*Id.*)

That may be true; however, 4.7 hours is excessive given that the complaints are not materially different except for the parties, addresses of the subject properties, and other minor differences. *See Doran v. Corte Madera Inn Best W.*, 360 F. Supp. 2d 1057, 1062 (N.D. Cal. 2005) (reducing hours from 4.3 to 0.5 for drafting of "form pleading that is identical in all substantive respects to complaints in other ADA lawsuits, including most of the 73 or so other ADA cases [the plaintiff's counsel] has brought with [the plaintiff]"). Further, Plaintiff and Mr. Mac Bride are an experienced team that works together on ADA cases and drafting a complaint that is similar in most material respects to their complaints in other cases would not take nearly 5 hours to complete. Finally, the billing records include separate time for evaluating the barriers, meeting with the client, and researching ownership. (Dkt. No. 46-2 at 1.) Thus, the Court reduces the hours expended and awards 1.0 hour for drafting the complaint and summons.

### 2. The Motion to Strike

Mr. Mac Bride's billing summary lists 18.2 hours expended (totaling $6,370 in fees) related to the motion to strike—6 hours to draft the motion and the remaining time spent

researching, reviewing Defendant's answer and proposed amendments, and corresponding with opposing counsel regarding the motion. (*See* Dkt. No. 46-2, Ex. 1.) Defendant challenges the hours expended because the motion was "completely useless and unnecessary" given the Court's November 2018 Order that disposed of the motion, ordered Defendant to file an amended answer within 14 days, and stated, in pertinent part:

> The parties should thereafter follow the procedures set forth in General Order 56. If at some point Plaintiff believes he needs a ruling on a motion to strike affirmative defenses in order to move the case forward, he shall file a written request with the Court that explains why a ruling is needed, that is, how it will move the case forward given its current posture. Unless and until the Court rules that such a motion may be filed, Plaintiffs shall not file a motion to strike any affirmative defenses.

(Dkt. No. 32.) In response to the Court's Order, Defendant filed an amended answer on December 11, 2018. (Dkt. No. 35.)

As to fees related to Plaintiff's motion to strike, Plaintiff does not dispute Defendant's "eagerness" to amend its answer in response to that motion but rather argues that Plaintiff's proffered amended answer "violated the basic pleading rules, and [P]laintiff" alerted Defendant to those defects "in detailed letters." (Dkt. No. 51 at ¶ 12.) Further, Plaintiff asserts that Defendant's amended answer filed in response to the Court's November 2018 Order still included non-compliant defenses that Plaintiff previously sought to strike. (*Id.*)

Plaintiff is correct that the amended answer contains some of the same affirmative defenses Defendant previously proffered to Plaintiff in its proposed amended answer. (*Compare* Dkt. No. 16-1 at 68-84 *with* Dkt. No. 35 at 11-18.) However, the total amount of time on the motion to strike is excessive. Defendant proposed deleting 15 of the 34 affirmative defenses in her original answer while meeting and conferring with Plaintiff regarding the motion to strike, (*see* Dkt. Nos. 16 at 3-4, 10 & 16-1 at ¶¶ 3-6), but Plaintiff refused Defendant's proposed amendments and moved to strike all 34 defenses, (*see* Dkt. No. 13; see also Dkt. No. 16-1 at ¶ 7). Plaintiff spent time drafting a motion to strike *all* affirmative defenses when Defendant had already agreed to remove 44% of the challenged defenses.

It is reasonable to reduce the hours expended on the motion by an equal percentage. Thus, the Court reduces the hours expended by 8 hours, awarding a total of 10.2 hours for work related to the motion to strike.

### 3. Tasks Related to Golden Valley

Defendant challenges the 6.1 hours Plaintiff spent litigating with Defendant Golden Valley. (Dkt. No. 50 at 15.) Defendant contends that Golden Valley's "presence in the litigation was pointless" because Golden Valley merely "remodeled a food truck for Defendant Bueno," and the truck "was not listed in either Plaintiff's or Defendant's inspection report as being non-compl[iant]." (*Id.*) Defendant asserts that Golden Valley should never have been named or should have been dismissed once Plaintiff received the inspection report. (*Id.*) Plaintiff's reply counters that Plaintiff did have a "colorable claim" against Golden Valley because "[t]here are legal theories under which the seller of a taco truck," such as Golden Valley, "can be liable in an ADA case." (*Id.* at ¶ 11.) Plaintiff and Golden Valley entered into a settlement agreement and stipulated to dismissal of all claims with prejudice as to Golden Valley. (*See* Dkt. No. 48.)

Regardless, any fees related to prosecuting Plaintiff's action against Golden Valley should not be a cost borne by Bueno. Where multiple defendants are present in litigation, courts will either divide fees equally among principal defendants, apportion fees by degree of culpability, or apportion fees by relative time spent litigating against each defendant. *Grendel's Den, Inc. v. Larkin*, 749 F.2d 945, 956-57 (1st Cir. 1984) (citing *Jose P. v. Ambach*, 669 F.2d 865, 871 (2d Cir.1982); *Southeast Legal Defense Group v. Adams*, 657 F.2d 1118, 1125 (9th Cir. 1981); *Seymour v. Hull & Moreland Engineering*, 605 F.2d 1105, 1117 (9th Cir. 1979).

Here, apportionment by time spent litigating against each defendant is appropriate. In *Cataphora Inc. v. Parker*, 848 F.Supp.2d 1064, 1069-70 (N.D. Cal. 2012), for example, the court reduced the plaintiff's claimed hours for time spent on work associated with a different defendant. Similarly, in *Cook Productions, LLC v. Szerlip*, the court opined that "[i]t would be *inequitable* for Defendant Szerlip to bear the litigation fees expended by Plaintiff directed toward the other defendants." 2017 WL 4883220, at *6 (D. Haw. Oct. 30, 2017) (emphasis added).

Thus, the Court denies Plaintiff compensation for the 6.1 hours spent litigating with Golden Valley. For the same reason, the Court finds Bueno not responsible for the time Plaintiff spent drafting the motion for entry of default of property owners, and, accordingly, also denies the 0.5 hours expended on this task. (Dkt. No. 46-2 Ex. 1 at 1.)

### 4. Communications with Plaintiff

The billing summary indicates that Mr. Mac Bride met initially with Plaintiff for less than two hours to discuss the case and "[e]valuate barriers as described by him and nature of probable claims."[4] Defendant argues that the amount of time "Plaintiff and Mr. Mac Bride spent in communication was unreasonable" because "Plaintiff has been represented in over one hundred cases by Mr. Mac Bride" and the "allegations in the complaint are the same allegations alleged in every other case Plaintiff has filed." (Dkt. No. 50 at 17.) Defendant zeroes in on the initial meeting, arguing that Mr. Mac Bride and Plaintiff "spent almost two hours discussing barriers that were not present." (Id.)

The billing entry in question is less than two hours and includes tasks unrelated to Mr. Mac Bride's communications with Plaintiff, including research and travel to the subject property.[5] Although Plaintiff and Mr. Mac Bride are familiar with each other and experienced in ADA litigation, considerably less than two hours to discuss an entirely new case is not unreasonable or excessive. Thus, the Court does not reduce the hours expended for this task.

### 5. Conducting Site Inspection and Reviewing Site Inspection Reports

Defendant challenges the 5.5 hours Mr. Mac Bride expended in "conduct[ing] the site inspection, review[ing] the report and issu[ing] the letter" to defense counsel regarding the inspection report. (Dkt. No. 50 at 17.) Defendant argues that the time is "over inflated" and alleges that "a portion of this task could have been assigned to a legal assistant." (*Id.*) Plaintiff's reply asserts that a lawyer was required to complete the site inspection, not a legal assistant, and

---

[4] The entry of 1.9 hours in the billing summary is block-billed and includes other tasks; specifically, researching ownership and deed history and driving to the property "to verify prima facie case." (Dkt. No. 46-2, Ex. 1 at 1.)
[5] A subsequent entry states includes "travel time of 30 minutes each way" for "[r]e-inspection of the subject business." (Dkt. No. 46-2, Ex. 1 at 3.)

8

1   that the report and letter required a "lawyer's analysis" that a legal assistant could not provide.

2   (Dkt. No. 51 at ¶ 16.)

3         Given the interrelationship of the tasks, two of which required substantive legal analysis,

4   the Court finds the tasks not overstaffed. Thus, 5.5 hours is reasonable for all the tasks Mr. Mac

5   Bride completed regarding the site inspection and the Court does not reduce the hours expended

6   for these tasks.

### 6. Drafting the Rule 26 Disclosures

The billing summary indicates that Mr. Mac Bride spent 0.9 hours drafting the Rule 26 disclosures in this case. (*See* Dkt. No. 46-2, Ex. 1 at 2.) Defendant argues that such time is unreasonable because "the[ ] disclosures consisted of one page and are likely the exact disclosures furnished in all 200 of Plaintiff's ADA cases." (Dkt. No. 50 at 17.) However, the Court is unable to determine whether the hours expended on this basis are unreasonable without having the disclosures before it. Thus, the Court does not reduce the hours expended on this task.

### 7. Reading Emails

Defendant further takes "issue with the fact that it takes Mr. Mac Bride around fifteen minutes to read every simple email communication[ ]." (Dkt. No. 50 at 18.) Defendant does not specify a billing entry he takes issue with, and it is not apparent from the face of the billing summary that the "email" entries are unreasonable. The Court does not reduce the hours expended on this basis.

### 8. Reviewing Defendant's Amended Answer

The billing summary includes an entry of one hour on December 11, 2018 for reviewing Defendant's amended answer. (*See* Dkt. No. 46-2, Ex. 1 at 3.) Defendant challenges that hour, arguing that the "first amended answer . . . was the same answer already submitted to [Mr. Mac Bride] on October 1, 2018, when [Defendant sought] stipulation to file it. (Dkt. No. 50 at 18.) Plaintiff counters that Defendant "exchanged several proposed amended answers, each one different, and each one in violation of the pleading standards." (Dkt. No. 51 at ¶ 17.) Thus, Plaintiff asserts that it was reasonable for Mr. Mac Bride "to review the answer carefully to

9

ascertain what affirmative defenses were being pled, and whether they really constituted defenses under the law." (*Id.*)

A review of Defendant's amended answer filed in December 2018, (*see* Dkt. No. 35), and the first and second proposed amended answers submitted in conjunction with Defendant's opposition to Plaintiff's September 2018 motion to strike, (*see* Dkt. No. 16-1 at 22-40, 58-85), shows that the amended answers are not identical although they do contain some overlapping affirmative defenses. Given that Plaintiff had previously rejected Defendant's proposed amended answers as insufficiently pled, and because those answers were different in material respects, the Court does not find it unreasonable that Plaintiff would closely scrutinize the December 2018 amended answer. Thus, the Court does not reduce the requested hours on this basis.

### 9. The Instant Motion

Defendant also challenges the 8 hours Plaintiff's counsel spent on the instant motion, saying that it would not have been necessary if Plaintiff's hours were not already inflated. Defendant further asserts that the instant fee motion was "yet another cut and paste task." (*Id.* at 18.) While fees can be awarded for time spent on a fee motion, the time expended must be reasonable. As discussed above, some of Plaintiff's time is inflated and unreasonable, which forced Bueno into defending against the instant motion. Accordingly, the Court reduces the time spent on the fee motion by the same percentage of all unreasonably expended hours in relation to the total hours requested (29.5%) and awards 5.64 hours for the instant motion.

***

In sum, the Court reduces the hours expended by 20.66 for a total of 41.34 hours. This total is reasonable given the complexity of the case, legal work completed, and Mr. Mac Bride's experience with ADA litigation.

### b. Reasonableness of Rates

Plaintiff requests $350 per hour, citing Mr. Mac Bride's experience, cases where attorneys have been awarded similar hourly rates in the district, and other ADA cases in this district where Mr. Mac Bride's $350 rate was approved. (Dkt. No. 46 at ¶¶ 12–15.) The parties do not disagree over Mr. Mac Bride's requested rate. Rather, Defendant argues that the case was overstaffed, as

10

1    Plaintiff's counsel completed tasks at a high billing rate that could have been done by a legal

2    assistant. (Dkt. No. 50 at 18-19.) Defendant asserts that "many of Mr. Mac Bride's hours" could

3    have been delegated to support staff. (*Id.* at 19.) However, Defendant does not specify which

4    tasks were "secretarial in nature and should be billed as overhead." (*See id.*) Defendant asks the

5    Court to reduce the billing rates to a reasonable amount. (*Id.*) Plaintiff's reply correctly observes

6    that Defendant provides no specific examples of tasks that could have been delegated. (Dkt. No.

7    51 at ¶ 21.)

    The parties do not dispute Mr. Mac Bride's requested hourly rate of $350, and the Court

finds the rate reasonable based on Mr. Mac Bride's experience litigating "over one hundred ADA

cases in the Northern District since 2012." (*See* Dkt. No. 46 at ¶ 12.) A rate of $350 is in line

with prevailing rates in the Bay Area for attorney services. *See Superior Consulting Servs., Inc. v.

Steeves-Kiss*, No. 17-cv-06059-EMC, 2018 WL 2183295, at *5 (N.D. Cal. May 11, 2018)

("[D]istrict courts in Northern California have found that rates of $475-$975 per hour for partners

and $300-$490 per hour for associates are reasonable."). Indeed, Mr. Mac Bride has been

awarded that rate in previous ADA cases in this district. (*See* Dkt. No. 46 at ¶ 13 (citing several

Northern District cases).) The issue is whether some of Mr. Mac Bride's itemized tasks, (*see* Dkt.

No. 46-2, Ex. 1), indicate "overstaffing" as argued by Defendant, that should have been "delegated

to colleagues with appropriate levels of experience," (*see* Dkt. No. 50 at 18). The Court does not

find that a reduction in rate is warranted for several reasons.

    First, none of the tasks listed on Mr. Mac Bride's billing summary appear "secretarial" in

nature such that they would not require the attention of an attorney. (*See generally* Dkt. No. 46-2,

Ex. 1.) The tasks are similar to those Mr. Mac Bride submitted in a previous ADA case, (*see* Dkt.

No. 46-5, Ex. 4), for which Mr. Mac Bride was awarded his requested fees, *see Castillo-Antonio v.

Alvarez*, No. 16-CV-00352-LHK, 2016 WL 4242241 (N.D. Cal. Aug. 11, 2016) (order adopting

report and recommendation). Second, the Court cannot determine, on the briefing alone, that Mr.

Mac Bride *could* have delegated the task to a junior attorney because it is unknown whether Mr.

Mac Bride is a solo practitioner. Regardless, the Court does not find that this matters; the

requested rate is on the lower end of rates found reasonable for even junior associates in the Bay

Area. *See Steeves-Kiss*, 2018 WL 2183295, at *5 ("[D]istrict courts in Northern California have found that rates of $475-$975 per hour for partners and $300-$490 per hour for associates are reasonable.")  Given that all the itemized tasks require the attention of an attorney, the Court does not find the case overstaffed and does not find the requested rate unreasonable.

In sum, the Court finds the requested rate of $350 per hour is reasonable for the itemized tasks and a reduction on that score is not warranted.

## CONCLUSION

For the reasons stated above, the Court GRANTS in part Plaintiff's motion for attorney's fees, and orders Defendant to pay Plaintiff's fees and costs in the total amount of $14,469.00, reflecting 41.34 hours expended at $350 per hour.

**IT IS SO ORDERED.**

Dated: September 13, 2019

JACQUELINE SCOTT CORLEY
United States Magistrate Judge